I'd like to start today by welcoming Judge Scarzi. We're very excited to have him sit with us today. It's always a great pleasure for us to get to have district court judges and especially one with as much experience in our relevant units as he has. So thank you for joining us today. Thank you very much. Okay, our first case for argument is 23-2358 Harrington v. Collins. Counsel, how do I say your name? Mr. Dohakis, your honor. Mr. Dohakis, please proceed. Thank you, your honor. May it please the court, Kenny Dohakis representing the appellant. On behalf of Mr. Harrington, I want to thank this court for the opportunity to present his appeal. We are here seeking a ruling that recognizes the proper standard of review under 38 CFR 4.20 when the VA selects an analogous code for an unlisted condition. Mr. Harrington asks this court to find that although the identification of specific diagnoses and symptomatology may be factual, the determination under 4.20 that an unlisted condition is closely related to a listed one is a question of law. So whether you fall within a listed condition is a question of fact? Yes, your honor. Then how could whether you aren't within a listed condition but you're analogous to one, how can that be anything other than a question of fact? It seems even more facty than the first question. I disagree with that, your honor. I think that when we're looking at whether it is closely analogous, we're looking at a specific term in, I'm sorry, closely related, we're looking at a specific term in the regulation which has a very specific definition, which is a regulatory interpretation matter. Then looking at the findings of fact made by the board which become undisputed at some point whether after it's been filtered through the veterans court's clearly erroneous review. We're looking purely at whether those specific findings of fact match the definition under the regulation of closely related. You're looking at whether specific findings of fact meet a definition under closely related. At best that sounds like application of law to fact then, right? It can be, your honor. I wanted to, in preparing for this, we... You just answered her question by saying it can be. Let me explain. Maybe I think for you to still have jurisdiction be proper here, tell us why you think it would not be. Yes, your honor. In preparation, and I will offer supplemental authority after briefing, after all arguments, sorry, we ran across Miller v. Fenton 474 US 104. This is a case that deals with this specific question of when a question is legal or factual. Here the... Is this one of our cases? This is a Supreme Court case, your honor. The court considered whether a confession's voluntariness should be a legal or factual question, and they highlighted that although there are many factual... When was it decided? 1985, your honor. Seems a little late for supplemental authority, doesn't it? Supplemental authority, like a Rule 28J letter, is usually something that you bring because it came up recently, and you didn't have access to it when you wrote your blue brief. Correct, your honor. Okay, all right, well keep going. We raise this because it reinforces the primary argument in looking at whether it's a factual or a legal issue, it's assessing which entity, the fact finder, the board, or the appellate court is in a better position to make those kinds of determinations. Do you think you need to be... Do you think our decision of whether or not a particular DC code is appropriate is correctly deemed a question of fact? When it's a listed condition, your honor, it is absolutely a question of fact because the fact finder says you have arthritis, there's a diagnostic code for arthritis, it has to be that, there's no other option, and although it is a... Why would it not be a question of fact for a condition that it's not listed? Again, your honor, because looking at which... Typically the courts have said, as we argued in our briefs, that when the appellate court is either a better or the agency in this case is not the better entity to make that kind of determination, there's no real expertise that's involved in determining whether it's closely related under the regulation. Wouldn't it seem like there's more expertise involved here in trying to come up with an analogous code? Wouldn't there be more expertise than just applying the standard code to the facts? No, your honor. The expertise is used to determine the diagnoses and the underlying facts of what is a veteran diagnosed with, what kind of condition, what are his symptoms, what are his impairments, what are his disabilities. And those all go into finding an analogous code, don't they? And then those go into the factual underpinnings and then the legal question becomes whether it's closely related to A, B, or C, depending on whatever situation the veteran is finding himself in. You indicated in your brief this is a question of regulatory interpretation. What needs to be interpreted in 420? What's the ambiguous language that needs to be interpreted as a matter of regulatory interpretation? Well, we don't assert that anything is ambiguous, your honor, but we do think that the court needs to initially address what is closely related under the regulation and what are the outer bounds of that within the regulatory definition using the normal tools of interpretation as outlined in Kaiser and Loper-Bright. So that is the primary phrase that needs to be interpreted. And then whether a unlisted condition is closely related to another, then, again, we're asserting as a legal question as opposed to factual. And I'm sorry, what's the primary phrase that needs to be interpreted? Closely related. So the beginning of the regulation, when an unlisted condition is encountered, it will be permissible to rate under a closely related disease or injury. And then it gives some guidance on kind of what to do with that. But the primary phrase is closely related. And what does that mean? And isn't closely related going to depend on a case-by-case basis? Well, certainly, each case is going to be dependent upon, again, the facts, undisputed facts, as found by the board. So how would you contend the court should construe the phrase closely related? I mean, it's a question of regulatory interpretation. What are the other words that get plugged in there? So, again, it's focused on primarily disease or injury. And then the regulation gives some additional information, affected functions, anatomical location, and symptomatology. And so those would help to reinforce what does that phrase mean in determining whether, again, under a legal ruling, an unlisted condition is analogous to one of the listed ones. And aren't those all questions of fact? Again, Your Honor, our position is that the facts are found by the board that identifies the diagnoses, the symptomatology, the impairments, and disability. And then once those are established, they become undisputed. This court has recognized numerous times that application of undisputed facts to the law is a question of law. And we think, again, that because the Veterans Court, which, by the way, has a couple decades of experience in this particular field, because that's all they look at. So even though, yes, the agency in normal district courts and normal other courts and jurisdictions don't necessarily specialize, this one does specialize. And so, again, I think that that leans towards making a finding that is a legal question as opposed to a factual one. If there are no other questions, I will preserve the rest of my time for rebuttal. Okay, very good. Thank you, counsel. Counsel, how do I say your name? Mager. Mr. Mager, please proceed. Thank you, Your Honor. May it please the Court. The Veterans Court correctly held that the assignment of a particular diagnostic code when rated by analogy is not a pure legal question to be reviewed in OVO, but is properly subject to review under the Arbitrary Capricious and Abusive Discretion Standard. Counsel, on the other side, made a bunch of arguments as he stood here at the podium that weren't familiar to me. I don't recall those being developed in his brief. Do you agree with that, or do you have a problem with it? How do you feel about this 1985 Supreme Court case, which I've got the text of here, and I'm sort of struggling to see how it relates, and perhaps you're not. Are you prepared to discuss that case? No, Your Honor, I have not looked at that case. I'm going to ask him on rebuttal, so he'll tell us. When he figured out that he thought that case was suddenly important, because it feels like one of those things that you'd put the court on notice of, you'd put opposing counsel on notice of, so it could be the subject of discussion if you really think it is your opening point. So I respect that you're not prepared to discuss it, and neither am I. So go ahead. That's fine, Your Honor. I understand that sometimes things do come up in review, but I cannot address those cases that I have not seen before. I cannot distinguish those cases. I cannot say how Miller v. Fenton, a 1985 case on confessions, would relate to any recent Supreme Court precedent in veterans' cases or any of this Court's decisions. Let me ask you a question just to level set. Are you asking us for a dismissal for lack of jurisdiction, or are you asking us to affirm? What is the relief you're seeking? No, we're asking you to affirm. Because the reason why is because what they have raised is they have said that the Veterans Court applied an improper legal standard itself. So as opposed to this Court having, you know, if they were directly challenging, say, the particular rating, that this Court would not have jurisdiction over. I think that would be pretty clear. But here they're raising a legal challenge, but the legal challenge requires the finding that ultimately these issues are legal questions that should have been subject to no vote review at the Veterans Court, and that's incorrect. Taking even a minute looking at the record and the Board decision below, it's quite clear that the Board's decision was based upon questions of fact. Just giving a few citations at 128 of the appendix. What they're doing here is asking us to decide facts questions or a mixed question of law and fact. The only question we have in front of us is what should the standard be that the Veterans Court used to review should it have been treated as a purely legal question when they were trying to decide whether it's analogous to something in the listed, you know, conditions or not. Right? That's what we're doing?  Okay. And so I think you were going there. Why don't you tell us why you think that is not a pure question of law? I think that can be easily answered by looking at the Board decision that was under review. I mean, at 128 in the appendix, the Board held that after a review of the evidence, after a review of the evidence, the facts before it, the Board finds the Veterans' esophageal symptoms are more closely resembled those contemplated under D.C. 7346, and that a rating, I guess, of 30 percent is not warranted. And the Court goes through a great amount of detail, particularly, or the Board, rather, goes through a great deal of detail at 133 to 135 of the appendix where they're looking at the other listed conditions. And all of those are repeatedly looking at the medical evidence. For example, 133, outside of the June 2014 examination note of vomiting, there is no evidence of periodic vomiting, severe pain, and recurrent, and I will apologize for my pronunciations of any medical terms in advance, and recurrent hematesis or anemia and weight loss. Thus, Diagnostic Code 7305 is not for application. Again, at 134. I mean, you're doing, yeah, I think we have this argument. You've done a great job with it. No problem there. You've explained to us how the Board decision itself demonstrates the detailed factual nature of what's being decided. But apart from that, I mean, don't we have some kind of important case law that governs us here that makes it difficult to conclude that this is, in fact, a factual question? I mean, if we did so, how could we distinguish our case law that says choosing what listed condition is a question of fact? Well, that's exactly it. I mean, the Court's decision, Deleese v. McDonald, which calls this a question of fact. There are a number of non-precedential decisions, which we note in our brief, but I will note that Valentine v. McDonald specifically addresses whether it's a question of fact in the context of Section 4.20. So is Deleese, do you think, the best case directly on point for the notion that selection of a D.C. is, if not purely a legal question at least, not purely a factual question, at least a question of application of law to fact? I think that's the best precedential decision. And again, Valentine v. McDonald is more on point, but it's a non-precedential decision, Your Honor. It seems to be Appellant's argument that the facts are set by the time it gets to the Board, but by the time it gets to the Appeals Court. And so now we're dealing with a question of law because the facts are already set. But we're still having to apply the facts that were set below to the law, correct? That's correct. And, Your Honor, I'll note, in their opening brief to the Veterans Court, they had asserted that this was a matter of fact to be reviewed by clear error. They subsequently, in their reply brief, said it's a question of law to be reviewed de novo. But I think even at the outset, the Petitioner here has recognized that this is a question of fact primarily. And it's true, isn't it, that there's not a clear case out there that says that the determination of an analogous D.C. code is a question of fact? No, there is no precedential decision on that. That is correct. Okay, anything further? That's all from the United States, Your Honor. Thank you very much. Thank you. Just a couple points, Your Honor. Number one, yes, there is no precedent on this question. And the lease was dealing with a listed condition, tinnitus. And I believe it was the knee. And the court essentially ruled that they have to rate it. So again, there is no precedent on this specific question, which is primarily why we brought this. With respect to Miller, Bufkin was issued after a briefing was done. And Bufkin cited to Miller, which then led me to that case. But Bufkin also talked about these kinds of questions between fact and law. And so we think that that is an important precedent for the court to understand as well. So it does sometimes happen that in the preparation for oral argument you come across a case or an associate comes across a case or something. But it's really much more helpful for the court and fairer to opposing counsel if you file a 28-J letter at that point. Whenever it was, I'm not going to put you on the spot, but whenever it was that you came across this case, even if it was yesterday, right, if you're going to stand up and the first thing out of your mouth is going to be there's this important Supreme Court case we failed to address, it's just not useful for us and it's kind of unfair to them. So I would ask in the future that you try to give some notice if you come up with something. I mean, it happens. It's going to happen, but try to give some notice. Absolutely, Your Honor. And just on the last point on that specific question, in our briefing, and I'm pointing right now to page 9 of our reply brief, although it gets into a little bit more detail, it did say in our opening brief, we talked about the context of 4.20, the veteran is awarded, does not require expertise that is beyond the capacity of the Veterans Court, and that's really the basis for why we think this is a legal termination. And that's all we have unless there are no other questions. Thank you very much. I thank both counsel for their argument. This case is taken under submission.